NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

EILEEN OLIVAS, individually and on behalf of the statutory beneficiaries of THOMAS OLIVAS, deceased, *Plaintiffs/Appellants*,

*v.*

YAVAPAI COUNTY, a political subdivision of the State of Arizona; DAVID RHODES, Yavapai County Sheriff, *Defendants/Appellees*.

No. 1 CA-CV 23-0637

FILED 09-10-2024

---

Appeal from the Superior Court in Yavapai County
No. P1300CV202200589
The Honorable John D. Napper, Judge

**AFFIRMED IN PART AND REVERSED IN PART**

---

COUNSEL

Robbins Curtin Millea & Showalter, LLC, Phoenix
By Anne E. Findling, Lauren E. Channell
*Counsel for Plaintiffs/Appellants*

Struck Love Bojanowski & Acedo, PLC, Chandler
By Nicholas D. Acedo, Ashlee B. Hesman
*Counsel for Defendants/Appellees*

---

## MEMORANDUM DECISION

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Michael J. Brown and Judge D. Steven Williams joined.

---

**K I L E Y**, Judge:

¶1　　　After Thomas Olivas ("Thomas") died in jail, his mother Eileen Olivas ("Eileen") brought a wrongful death suit against Yavapai County and the Yavapai County Sheriff (collectively, the "County") on behalf of herself and Thomas's minor children (the "Minor Beneficiaries") (Eileen and the Minor Beneficiaries collectively, "Plaintiffs").[1] Determining that Plaintiffs did not serve a statutorily-compliant notice of claim ("NOC") prior to filing suit, the superior court granted summary judgment in favor of the County and dismissed all claims with prejudice. For the following reasons, we affirm in part and reverse in part.

## FACTS AND PROCEDURAL BACKGROUND

¶2　　　Viewed in the light most favorable to Plaintiffs as the parties against whom summary judgment was granted, *see Estate of Brady v. Tempe Life Care Village, Inc.*, 254 Ariz. 122, 127, ¶ 21 (App. 2022), the record shows that on the afternoon of August 20, 2021, Thomas self-surrendered to the Yavapai County Detention Center to begin serving an eight-day sentence. During the intake process, Thomas was found to be intoxicated, with a blood alcohol content ("BAC") of 0.365. Intake officials admitted Thomas to the jail and, because his high BAC "put him at risk for acute alcohol withdrawal," "housed [him] in an infirmary cell" where he was "placed on an alcohol withdrawal protocol."

¶3　　　At some point between intake on August 20 and the following evening, Thomas "apparently ingested . . . fentanyl." He was pronounced dead at 8:04 p.m. on August 21.

¶4　　　In September 2021, Eileen requested Thomas's autopsy and toxicology reports from the Yavapai County Medical Examiner's Office. She received both reports on October 6, 2021. The autopsy report concluded that

---

[1] For the sake of clarity, we respectfully refer to persons who share a last name by their first names.

Thomas died due to "fentanyl intoxication" while the medical examiner's findings were consistent with "fentanyl ingestion within hours of his death."

¶5        On February 2, 2022, Eileen served a notice of claim (the "February 2022 NOC") alleging that Thomas's "cause of death includes alcohol intoxication, a condition requiring medical attention" that County officials neglected to provide. The February 2022 NOC set forth the underlying facts as follows:

> At or near the time of booking, [Thomas] was determined to have a BAC of 0.365%. Despite this alarming alcohol level, [he] was booked into the jail. Medical screeners, who were responsible for assessing [his] medical eligibility for incarceration, failed to refer [him] for medical clearance prior to his admission to the jail . . . [Thomas] was at risk for fatal alcohol withdrawal. In addition, despite obvious evidence of [intravenous] drug use, the screener also indicated that [Thomas] did not use drugs and was not in detox. [Thomas] also presented with hypertension . . . [and] was tachycardic during his admission, but no medical care was provided.
>
> Rather than referral to the appropriate specialty care, [Thomas] was housed in the infirmary. The medical record is devoid of any actual treatment by the medical provider.
>
> * * *
>
> [Thomas] died without any meaningful medical care despite presenting with conditions requiring a higher standard of care (hospital) than available at the jail (no care).

The February 2022 NOC asserted that the County violated its "non-delegable duty to provide for the care, custody, and control of the inmates in its jails, . . . [which] includes *refusing to incarcerate individuals who*, by virtue of their medical conditions, *need a higher level of medical care than available at the jail*." (emphasis added).

¶6        The County evidently did not respond to the February 2022 NOC and Eileen filed suit, "individually and on behalf of [Thomas's] statutory beneficiaries," for wrongful death and negligence. Unlike the February 2022 NOC, however, the complaint did not allege that medical screeners breached a duty to Thomas at the time of intake by admitting him to the jail despite his "alarming [blood] alcohol level" and the consequent

3

risk of "fatal alcohol withdrawal." Instead, the complaint alleged that "[s]ometime prior to 7:30 p.m. on August 21, 2021," Thomas "ingested the narcotic fentanyl" which, upon information and belief, "was given to [him] by someone at the jail." Thereafter, Thomas "developed, and began to show, symptoms of opiate ingestion." Although "corrections officers employed by [the County]" were required to "conduct security and welfare checks" to "assess [inmates'] health and safety," the complaint alleged, the corrections officers failed to do so. Because "timely welfare checks were not being conducted, resuscitation and life-saving measures were delayed" after Thomas "became unresponsive." As a result, the complaint concluded, Thomas "died" of "fentanyl intoxication."

¶7        In April 2023, the County filed a motion for summary judgment arguing that Plaintiffs "fail[ed] to serve a valid notice of claim." The County asserted that the February 2022 NOC alleged that the County was negligent because its officials "did not recognize [Thomas's] alcohol intoxication" at "intake" and so improperly "assigned him to the Jail's infirmary instead of sending him to the hospital." Her complaint, by contrast, was "premised on allegations that [the County's] corrections officers did not conduct adequate welfare checks" after he was admitted to the jail, "which resulted in him taking and overdosing on fentanyl." Because the allegations in the February 2022 NOC materially differed from those in the complaint, the County asserted, the February 2022 NOC failed to comply with A.R.S. § 12-821.01(A). The County further asserted that the statutory 180-day deadline for filing a timely notice of claim had expired, explaining that Plaintiffs' claims accrued, at the latest, on "October 6, 2021, when [Eileen] received a copy of the . . . autopsy and toxicology reports indicating that [Thomas] died of a fentanyl overdose." Plaintiffs' opportunity to cure the deficiencies in the February 2022 NOC expired on April 4, 2022, the County maintained, and so their claims should be dismissed with prejudice.

¶8        In response, Plaintiffs insisted that the February 2022 NOC satisfied statutory requirements because it set forth "facts sufficient to permit [the County] to understand the basis on which liability [was] claimed." Both the February 2022 NOC and the complaint, they asserted, alleged that the County breached its "non-delegable duty of care" for jail inmates by failing to provide "appropriate treatment" for Thomas's "emergent medical need," which "ultimately [led] to his death." Plaintiffs further argued that under no circumstances could the Minor Beneficiaries' claims properly be dismissed because A.R.S. § 12-502 tolled the time for serving a NOC during their minority.

**¶9**　　　　After a hearing, the superior court granted summary judgment in the County's favor as to all claims and all parties. The February 2022 NOC did not provide sufficient facts to enable the County to understand the basis of the claim, the court held, because it set forth "an entirely different theory of liability" from the allegations in the complaint. Without expressly addressing Plaintiffs' alternative argument that the Minor Beneficiaries' claims had not yet accrued, the court found that "any time for Plaintiff [*sic*] to file an accurate [NOC] has expired" and so dismissed all claims with prejudice.

**¶10**　　　　The court entered final judgment shortly thereafter, and Plaintiffs timely appealed. We have jurisdiction. *See* A.R.S. § 12-2101(A)(1).

## DISCUSSION

**¶11**　　　　Plaintiffs challenge the grant of summary judgment on their wrongful death and negligence claims. An appellate court "reviews the entry of summary judgment *de novo*, viewing the evidence and reasonable inferences in the light most favorable to" the non-moving party. *Estate of Brady*, 254 Ariz. at 127, ¶ 21 (citation omitted).

**¶12**　　　　A wrongful death action may be brought, *inter alia*, by the deceased person's surviving spouse, child, or parent "for and on behalf of the surviving [spouse], children, or parents." A.R.S. § 12-612(A). Only a single wrongful death action may be brought, and the amount recovered in such a suit must be distributed among the survivors. A.R.S. § 12-612(C); *see also Nunez v. Nunez*, 25 Ariz. App. 558, 562 (1976) (stating that "there is 'one action' for damages occasioned by a wrongful death," and "one plaintiff, one of the persons designated by statute").

**¶13**　　　　As a prerequisite to filing suit against a public entity, a claimant must serve a NOC on the entity in compliance with A.R.S. § 12-821.01(A).

> The [NOC] shall contain facts sufficient to permit the public entity . . . to understand the basis on which liability is claimed. The [NOC] shall also contain a specific amount for which the claim can be settled and the facts supporting that amount.

A.R.S. § 12-821.01(A). A statutorily-compliant NOC serves "to provide the government entity with an opportunity to investigate the claim, assess its potential liability, reach a settlement prior to litigation, budget and plan." *Havasupai Tribe of Havasupai Reservation v. Ariz. Bd. of Regents*, 220 Ariz. 214, 223, ¶ 30 (App. 2008). "Claims that do not comply with A.R.S. § 12-

821.01(A) are statutorily barred." *Deer Valley Unified Sch. Dist. No. 97 v. Houser*, 214 Ariz. 293, 295, ¶ 6 (2007). But if "a genuine issue of material fact exists as to whether the requirements of [Section 12-821.01(A)] have been complied with, the issue shall be resolved before a trial on the merits and at the earliest possible time." A.R.S. § 12-821.01(G).

## I.     The February 2022 NOC Did Not Satisfy Statutory Requirements.

**¶14**     Plaintiffs argue that the superior court erred by finding that the February 2022 NOC failed to comply with Section 12-821.01(A). The February 2022 NOC, they assert, stated that Thomas "died a little over one day after his admission to the jail" because the County's "employees" and "their contractor denied or delayed emergent medical care." Accordingly, they maintain, it "contained facts sufficient to allow [the County] to investigate and to understand" that its claimed liability "was based on negligence resulting in" Thomas's death. In response, the County asserts that the February 2022 NOC "[did] not comply with" Section 12-821.01(A) because it "include[d] a set of facts" that was "different from the allegations in the complaint." "We review *de novo* a trial court's determination that a party's notice of claim failed to comply with § 12-821.01." *Jones v. Cochise Cnty.*, 218 Ariz. 372, 375, ¶ 7 (App. 2008).

**¶15**     Another panel of this Court recently addressed an issue like that presented here in *Sanchez-Ravuelta v. Yavapai Cnty.*, __, __, 548 P.3d 347, 354-55, ¶¶ 20-21 (App. 2024). In that case, the plaintiffs were injured in a multi-vehicle collision at an intersection caused by an intoxicated motorist leaving a bar. *Id*. at 351, 353, ¶¶ 2, 13. The plaintiffs brought negligence-based claims against the State of Arizona, Yavapai County, and the Town of Dewey-Humboldt for failing to warn of the "unreasonably dangerous" intersection, failing to enforce the intoxicated motorist's prior DUI-related license suspension, and issuing a liquor license to a bar known for "overserving its customers." *Id*. at ¶¶ 2-3. Because their NOCs alleged specific facts relating only to the issuance of the liquor license, the superior court dismissed all claims against all defendants except the negligent-issuance claim against the state. This Court affirmed on appeal, rejecting the plaintiffs' argument that Section 12-821.01(A) requires merely that a NOC "provide[] *some* facts forming the basis of liability." *Id*. at 354, ¶ 17 (emphasis added). On the contrary, the *Sanchez-Ravuelta* court held, the plain language of Section 12-821.01(A) requires that a NOC contain "facts sufficient" to enable the public entity "to understand the *basis on which liability is claimed*." *Id*. at ¶ 19 (emphasis in original). "Because the [NOCs] contained only facts sufficient for the state to understand the basis of the plaintiffs' negligent issuance of a liquor license claim," the Court held, the

NOCs "were insufficient as a matter of law as to all other claims." *Id*. at ¶ 20.

**¶16**        *Sanchez-Ravuelta* makes clear that a notice of claim fails to satisfy statutory requirements if it sets forth facts different from those alleged in the complaint as the factual basis of the defendant's liability.  This Court reached similar conclusions in *Haab v. Cnty. of Maricopa*, 219 Ariz. 9 (App. 2008) and *Barth v. Cochise Cnty.*, 213 Ariz. 59 (App. 2006). *See Haab*, 219 Ariz. at 9, ¶ 1 (holding that a NOC "that alleges one set of wrongs by a public entity" does not provide notice of "subsequent related but different wrongs by the same entity," and so "does not comply with" Section 12-821.01(A)); *Barth*, 213 Ariz. at 61, 63-64, ¶¶ 5, 17 (deputy sheriff served NOC on his employer alleging "harassment" and "retaliation" by his supervisors, then quit and sued for constructive discharge; affirming summary judgment for noncompliance with Section 12-821.01(A), the Court held that because the deputy was still employed when the NOC was served, the NOC "did not and could not include sufficient facts for the county to investigate and address the [constructive discharge] claim").

**¶17**        Here, both the February 2022 NOC and the complaint alleged that Thomas died in jail due to the failure of County officials to respond appropriately to his medical needs. There, however, the similarities between the February 2022 NOC and the complaint end. The February 2022 NOC alleged that Thomas's "cause of death includes alcohol intoxication," and did not mention fentanyl. The complaint, by contrast, alleged that Thomas died of "fentanyl intoxication." The February 2022 NOC alleged that Thomas "enter[ed] the jail with a high blood alcohol content" while the complaint alleged that Thomas did not ingest the fatal intoxicant until after he was admitted to the jail. The February 2022 NOC placed blame for Thomas's death on the negligence of "[m]edical screeners" who "were responsible for assessing [his] medical eligibility for incarceration" at intake, while the complaint identifies the negligent actors as the "corrections officers" who failed to conduct periodic "security and welfare checks." Because the February 2022 NOC and the complaint identify different causes of Thomas's death, and cite different acts and omissions by different individuals at different times as the basis for the County's liability, the February 2022 NOC failed to comply with the requirements of Section 12-821.01(A).

**¶18**        Insisting that the facts set forth in the February 2022 NOC satisfied Section 12-821.01(A), Plaintiffs rely on *Backus v. State*, 220 Ariz. 101 (2009). In *Backus*, the widow of a deceased prison inmate served a NOC on the State that calculated her damages at $507,400 and stated, without

explanation, that she would settle her claim for "the amount of $500,000." 220 Ariz. at 103, ¶ 2. The State argued that the widow's NOC did not satisfy Section 12-821.01(A) because it failed to "disclose[] facts that, viewed objectively, are sufficient to allow the public entity to understand," *inter alia*, "how the claimant reached the specific amount demanded." *Id.* at 105, 106, ¶¶ 13, 22. Rejecting the State's argument, the *Backus* court held that a claimant satisfies the statute's "basis for settlement amount" requirement merely by disclosing facts "that *the claimant views* as supporting the amount claimed" in the settlement demand. *Id.* at 107, ¶ 24 (emphasis added).

**¶19**        *Backus*'s interpretation of the "specific amount" requirement of Section 12-821.01(A) was based on the text of the statute's third sentence, in which the word "sufficient" does not appear. *See* A.R.S. § 12-821.01(A) ("The claim shall also contain a specific amount for which the claim can be settled and the facts supporting that amount."). The *Backus* court held that had the legislature "intended to require that a notice contain facts 'sufficient' to support" the claimant's settlement demand, "it would have said so." *Backus*, 220 Ariz. at 106, ¶ 22.

**¶20**        By contrast, the "basis of liability" requirement found in the second sentence of Section 12-821.01(A) *does* require a NOC to "contain facts *sufficient to permit the public entity . . . to understand the basis on which liability is claimed*." A.R.S. § 12-821.01(A) (emphasis added). Because the "basis of liability" language of Section 12-821.01(A) expressly requires a showing of "sufficiency" that is absent from the statute's "specific amount" language, the *Backus* court's interpretation of the latter sheds no light on the proper interpretation of the former.

**¶21**        In asserting that the deficiencies in their February 2022 NOC should be excused, Plaintiffs cite "the informational disadvantage of claimants." A NOC must be served "within a short time after an incident," they argue, when "the claimant is unlikely to have all documents, expert opinions, or other evidence which may ultimately be relevant." To require factual specificity "when a claimant is unlikely to have a complete understanding of the facts" would, Plaintiffs maintain, contravene legislative intent by creating an "obstacle to claimants' actions against public entities."

**¶22**        Plaintiffs' argument is unavailing. By its plain language, Section 12-821.01(A) requires a NOC to contain facts sufficient to enable the public entity to understand the basis of its claimed liability. Our obligation to apply the words as written precludes us from adopting Plaintiffs' suggestion that their failure to adhere to the statute's mandate should be

excused to accommodate a purported "informational disadvantage." *See James v. City of Peoria*, 253 Ariz. 301, 305, ¶ 21 (2022) ("We will not construe the notice of claim statute . . . in a way that defeats the clear text of the statute.").

**¶23**        Moreover, while some claimants in other circumstances may well be at an "informational disadvantage" when preparing their NOCs, we perceive no such disadvantage here. Eileen served the February 2022 NOC *after* receiving the autopsy and toxicology reports reflecting that Thomas died from fentanyl intoxication and had likely ingested the drug within a few hours of his death. Plaintiffs cannot fairly blame an "informational disadvantage" for Eileen's failure to include those facts in the February 2022 NOC.

**¶24**        Noting that allowing public entities to investigate and assess their potential liability is one of the purposes of A.R.S. § 12-821.01(A), Plaintiffs also argue that the February 2022 NOC must be deemed statutorily-compliant absent a showing by the County that its deficiencies "prevented [the County] from investigating the matter or evaluating the potential for settlement." Plaintiffs' argument is contrary to case law holding that claimants "must strictly comply with § 12-821.01," *Yahweh v. City of Phoenix*, 243 Ariz. 21, 23, ¶ 12 (App. 2017), and that "[a]ctual notice and substantial compliance do not excuse failure to comply with the statutory requirements of [Section] 12-821.01(A)." *Falcon ex rel. Sandoval v. Maricopa Cnty.*, 213 Ariz. 525, 527, ¶ 10 (2006).

**¶25**        Because the February 2022 NOC did not contain facts sufficient to permit the County to understand the basis on which liability was claimed with respect to the claims alleged in the complaint, it did not comply with Section 12-821.01(A).

**¶26**        A notice of claim must be served within 180 days after the cause of action accrues. A.R.S. § 12-821.01(A). As the superior court correctly found, the cause of action accrued on October 6, 2021, when the autopsy and toxicology reports were disclosed, revealing that Thomas died from fentanyl ingested after he began his jail term.[2] Eileen therefore had 180

---

[2] We reject the County's argument that the cause of action accrued on August 21, 2021, the day Thomas died. Although Thomas's family members were (presumably) promptly notified of his death, they could not have known that he died of fentanyl intoxication until the autopsy results were disclosed. *See Walk v. Ring*, 202 Ariz. 310, 316, ¶ 22 (2002) (noting, in the

days from that date, or until April 4, 2022, to either amend her deficient NOC or serve a new one that met statutory requirements. She failed to do so, and her 180-day deadline for serving a statutorily-compliant notice of claim expired long before the County moved for summary judgment in April 2023. Accordingly, the court did not err in granting summary judgment in the County's favor and dismissing Eileen's wrongful death and negligence claims with prejudice. *See also Falcon*, 213 Ariz. at 527, ¶ 10 ("If a notice of claim is not properly filed within the statutory time limit, a plaintiff's claim is barred by statute.").

## II. The Minor Beneficiaries' Claims Should Not Have Been Dismissed With Prejudice.

**¶27**         Plaintiffs also argue that the superior court erred "in dismissing the claims of [the Minor Beneficiaries]," asserting, first, that their "claims have not yet accrued."

**¶28**         Arizona statute provides that "a cause of action accrues when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition that caused or contributed to the damage." A.R.S. § 12-821.01(B). Nothing in the statute suggests that a cause of action's accrual date varies depending on whether the injured party is a minor or an adult. Likewise, A.R.S. § 12-502, which tolls the running of limitations periods for minors, does not indicate that an injured party's minority delays a claim's accrual date. Plaintiffs' argument that the Minor Beneficiaries' claims will not accrue until they turn eighteen conflates the accrual of a cause of action with the tolling of the applicable limitations period. Accrual and tolling are distinct concepts. *See Holland v. Florida*, 560 U.S. 631, 647 (2010) (citing case law recognizing distinction "between the *accrual* of the plaintiff's claim and the *tolling* of the statute of limitations") (emphasis in original). We hold that the Minor Beneficiaries' claims, like Eileen's, accrued on October 6, 2021.

**¶29**         Plaintiffs next argue that the Minor Beneficiaries' claims should not have been dismissed with prejudice because they still have time to cure the deficiencies in the February 2022 NOC. Pointing out that Section 12-821.01(D) extends the deadline for a minor to serve a NOC until "180 days after reaching the age of majority," Plaintiffs assert that the Minor

---

context of accrual, that "it is not enough that a plaintiff comprehends a 'what'; there must also be reason to connect the 'what' to a particular 'who' in such a way that a reasonable person would be on notice to investigate whether the injury might result from fault").

Beneficiaries should be allowed "to serve an amended notice of claim within the time specified in that provision."

**¶30**       A claimant who serves a deficient NOC may cure the deficiency by serving a new or amended NOC, provided that the claimant does so within the time limit set by Section 12-821.01. *See Turner v. City of Flagstaff*, 226 Ariz. 341, 344, ¶ 15 (App. 2011) (noting there is "no reason why a claimant may not amend a notice of claim . . . to cure a defect in the notice," as long as the amendment is timely), *abrogated on other grounds as recognized by Fields v. Oates*, 230 Ariz. 411, 415, ¶ 16 (App. 2012); *cf. Pinal Cnty. v. Fuller*, 245 Ariz. 337, 343, ¶ 21 (App. 2018) (holding that a statutorily-compliant NOC "did not cure the defect" in the earlier, deficient NOC because the second NOC was "untimely"). Although the Minor Beneficiaries' claims accrued on October 6, 2021, their 180-day deadline for serving a NOC will not begin to run until they each turn eighteen years old. A.R.S. § 12-821.01(D) ("Notwithstanding [Section 12-821.01(A)], a minor . . . may file a [NOC] within [180] days after the disability ceases."). The Minor Beneficiaries therefore still have time to cure the deficiency in the February 2022 NOC by amending it, or serving a new one, as long as they do so within the extended deadline set forth in Section 12-821.01(D).

**¶31**       The County argues that although the Minor Beneficiaries were not statutorily *required* to serve a NOC until 180 days after they turn eighteen, the 180-day deadline set forth in A.R.S. § 12-821.01(A) applies to bar their claims here because they "*did* serve" a NOC in February 2022.

**¶32**       The County's argument is unavailing. Eileen's inability to cure the deficiencies in the NOC she served does not prevent other statutory beneficiaries from serving their own, statutorily-compliant NOCs. *See Neff v. Risen*, 1 CA-CV 21-0236, 2021 WL 6139733, at *2, ¶ 11 (Ariz. Ct. App. Dec. 30, 2021) (mem. decision) (noting "[t]here is no requirement in A.R.S. § 12-821.01 that there be only one NOC on behalf of all statutory beneficiaries"). To hold that the Minor Beneficiaries' claims are time-barred simply because Eileen's claim is time-barred would be to enforce the deadline set forth in Section 12-821.01(A) while ignoring the exception created by Section 12-821.01(D). We will not, of course, apply one subsection of the statute while ignoring another. *See Boyd v. State*, 256 Ariz. 414, __, 540 P.3d 1228, 1231-32, ¶ 9 (App. 2023) ("We interpret . . . statutory language in view of the entire text," and "[s]tatutes addressing the same subject matter should be harmonized when possible.").

**¶33**       In support of its position, the County cites *Wostrel v. Arizona*, No. CV-22-00312-PHX-DLR, 2023 WL 2308417, at *6 (D. Ariz. Mar. 1, 2023),

*on reconsideration* 2023 WL 3022471 (D. Ariz. Apr. 20, 2023). In *Wostrel*, a father brought state law claims, on his own behalf and on behalf of his minor children, against certain child welfare officials based on their actions in juvenile dependency proceedings. In dismissing the father's claims for failure to serve a NOC, the federal district court rejected the minor children's argument that their claims should not be dismissed because their claims would not accrue until they reached majority. The *Wostrel* court held that because the minor children had filed claims, those claims had necessarily accrued notwithstanding the children's continued minority. 2023 WL 2308417 at *6. Because the children's claims had accrued, the Court concluded, their failure to serve a NOC required the dismissal of their claims. *Id*.

**¶34**        *Wostrel* is inapposite because it addressed an issue different from that presented here. In *Wostrel*, the court addressed the question of whether a minor plaintiff's cause of action had accrued. Here, by contrast, the question is not *when* a cause of action accrues, but how much time a minor plaintiff has *after* accrual to serve a statutorily-compliant NOC. We reject the County's argument that Section 12-821.01(A)'s 180-day limit sets the deadline for a minor plaintiff to cure or amend a deficient NOC, and hold, instead, that Section 12-821.01(D) extends, until 180 days after reaching majority, a minor plaintiff's deadline to cure or amend a deficient NOC. Such a holding is not only consistent with the statutory text, but with the principle that "if there is doubt as to which of two limitations periods should apply, courts generally apply the longer." *State v. Ariz. Bd. of Regents*, 253 Ariz. 6, 13-14, ¶ 29 (2022) (citation omitted).

**¶35**        Although Eileen is not able to cure her deficient notice of claim via timely amendment, the Minor Beneficiaries' deadline for doing so under Section 12-821.01(D) has not yet expired. Accordingly, although Eileen's claims were properly dismissed with prejudice, we see no reason why the Minor Beneficiaries' claims must also be dismissed with prejudice. *See also Falcon*, 213 Ariz. at 527, ¶ 10 (noting that a claim against a government entity is barred "[i]f a notice of claim is not properly filed *within the statutory time limit*") (emphasis added). Instead, their claims should have been dismissed without prejudice, allowing them to serve a statutorily-compliant NOC within the time limit set forth in Section 12-821.01(D).

## CONCLUSION

**¶36**        Because the February 2022 NOC did not satisfy the requirements of A.R.S. § 12-821.01(A), we affirm summary judgment in favor of the County and the dismissal of Plaintiffs' complaint. We affirm

the dismissal with prejudice of Plaintiff Eileen Olivas's wrongful death and negligence claims, but reverse the dismissal with prejudice of the Minor Beneficiaries' claims and remand with directions that their claims be dismissed without prejudice.



AMY M. WOOD • Clerk of the Court
FILED:      AGFV